USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 10/25/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: JACOBY & MEYERS –
BANKRUPTCY LLP, et al.

Chapter 7 Case No. 14-10641 (SCC),
No. 14-10642 (SCC)

---

JIL MAZER-MARINO, *as Chapter 7 Trustee for Jacoby & Meyers – Bankruptcy LLP and Macey Bankruptcy Law, P.C.*,

Plaintiff,

v.

THOMAS G. MACEY, JEFFREY J. ALEMAN, RICHARD K. GUSTAFSON, II, SHOBHANA KASTURI, GEORGE MACEY, and JASON SEARNS,

Defendants.

No. 15-cv-7144 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Defendants Thomas G. Macey, Jeffrey J. Aleman, Richard K. Gustafson, II, George Macey, Jason Sears, and Shobhana Kasturi move to withdraw the reference of this proceeding from the United States Bankruptcy Court for the Southern District of New York to this Court, pursuant to 28 U.S.C. § 157(d) and Local Rule 5011-1. For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND

Prior to their involuntary bankruptcies, Debtors Jacoby & Meyers – Bankruptcy, LLP ("J&M") and Macey Bankruptcy Law, P.C. ("MBL") (collectively, "Debtors") were law firms,

which specialized in bankruptcy law and provided services to thousands of clients in at least twelve states. *See* Compl. ¶ 1.[1] The firms operated through approximately twenty main or "hub" offices, each of which serviced satellite offices. *See id.* ¶ 35. Defendants Thomas G. Macey, Jeffrey J. Aleman, Shobhana Kasturi, and Richard K. Gustafson, II owned and/or operated the two firms. *See id.* ¶ 1.

In or about January 2013, MBL applied for registration to engage in the practice of law in Illinois. *See id.* ¶ 82. MBL's application was not approved. *See id.* ¶¶ 83–85. Nonetheless, MBL continued to hold itself out as a professional corporation, signing retainer agreements and collecting fees from new clients. *See id.* ¶¶ 86, 92. In September and October 2013, MBL and J&M entered into several agreements purporting to transition hundreds of clients, including fees held in these clients' accounts, to new counsel. *See id.* ¶¶ 95–152. In November 2013, Macey instructed Aleman to terminate the operations of MBL and J&M, and by December 31, 2013, the firms' offices had closed. *See id.* ¶¶ 93–94.

On March 14, 2014, creditors to J&M and MBL filed Chapter 7 Involuntary Petitions for relief against both firms. *See id.* ¶ 15. On April 10, 2014, the firms moved to dismiss the petition for improper venue. *See* Bankr. Dkt. 10.[2] On May 28, 2014, the Bankruptcy Court (Chapman, J.) held a hearing on the motion, at which the parties addressed several issues related to the instant dispute, including the location of the Debtors' operations and assets, the extent to which Defendants exercised control over the Debtors, and the alleged transfer of client accounts and other assets before the petition was filed. *See* Tr. of May 28, 2014 Hearing (May 29, 2014) (Bankr. Dkt.

---

[1] The complaint is attached as Exhibit A to Certain Defendants' Motion to Withdraw the Bankruptcy Court Reference for Cause ("Defs. Mem.") (Dkt. 3).

[2] "Bankr. Dkt" refers to the docket for Debtors' Chapter 7 cases, No. 14-BK-10641 (SCC) (J&M) and No. 14-BK-10642 (SCC) (MBL). "Bankr. Adv. Dkt.," meanwhile, refers to the docket for the Trustee's adversary proceeding, No.15-AP-1115 (SCC).

2

16). The following day, the Bankruptcy Court denied the motion to dismiss. *See* Order (May 29, 2014) (Bankr. Dkt. 15). On June 16, 2014, the Bankruptcy Court entered orders for relief against the Debtors. *See* Bankr. Dkt. 17. The same day, the Bankruptcy Court appointed the United States Trustee. *See* Bankr. Dkt. 18.

On May 29, 2015, the Trustee commenced this adversary proceeding. *See* Compl. According to the Trustee, the Debtors, through their assignee, were unable to provide basic information or records regarding their financial condition. *See id.* ¶ 171. Based on the records it was able to obtain, however, the Trustee alleges that, during the two years before the Chapter 7 petitions were filed, the Debtors transferred millions of dollars to Macey, Aleman, Gustafson, Kasturi, and Searns for those Defendants' personal benefit. *See id.* ¶¶ 180–204. The complaint asserts claims for negligence, breach of fiduciary duty, preferential and fraudulent transfers, and piercing the corporate veil. *See id.* ¶¶ 205–91.[3]

On September 10, 2015, Defendants filed the instant motion to withdraw the reference of this case from the Bankruptcy Court to this Court. *See* Defs.' Mot. (Dkt. 1). On September 24, 2015, the Trustee filed a brief in opposition. *See* Pl.'s Mem. in Opp'n to Mot. to Withdraw Bankr. Ref. ("Pl. Mem.") (Dkt. 12). On October 1, 2015, Defendants filed a reply. *See* Defs. Reply Mem. (Dkt. 14).[4]

---

[3] In total, the complaint asserts eleven causes of action. *See* Compl. ¶¶ 205–91. Seven of these causes of action, however, are claims for fraudulent transfer, such as intentional fraudulent transfer, actual fraudulent transfer, and constructive fraudulent transfer, which are pled in the alternative. *See id.* ¶¶ 244–84. For purposes of deciding the instant motion, distinctions between these fraudulent transfer claims are not material.

[4] Kasturi did not join in the initial motion to withdraw, *see* Defs. Mot., but subsequently moved to join the motion, *see* Mot. for Joinder (Dkt. 8). On September 21, 2016, the Court granted Kasturi's motion and explained that it would consider the motion to withdraw as if it were also filed on Kasturi's behalf. *See* Order (Dkt. 18).

On May 9, 2016, while Defendants' motion to withdraw was pending before this Court and after the Trustee had amended its complaint, Defendants moved to dismiss the adversary proceeding in the Bankruptcy Court. *See* Bankr. Adv. Dkts. 54, 57. On November 2, 2016, the Bankruptcy Court held a two-hour oral argument on the motions. *See* Tr. of Nov. 2, 2016 Hearing (Bankr. Adv. Dkt. 67). During the hearing, the Bankruptcy Court discussed the Trustee's allegations and claims in detail. *See id.* In addition, the Bankruptcy Court discussed several discovery-related issues with the parties, inquiring about the status of document productions and providing some preliminary views on the proper scope of discovery. *See id.*

## LEGAL STANDARD

District courts have original jurisdiction over bankruptcy cases and all civil proceedings "arising under" or "related to" cases under Title 11. 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a), a district court may refer actions within its bankruptcy jurisdiction to the bankruptcy judges for the district. *See id.* § 157(a). In this District, a standing order automatically refers all bankruptcy cases to the bankruptcy courts. *See In re Standing Order of Reference Re: Title 11*, 12 Misc. 32 (S.D.N.Y. Feb. 1, 2012).

Under 28 U.S.C. § 157(d), a "district court may withdraw, in whole or in part, any case or proceeding" referred to a bankruptcy court "on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Section 157(d) does not define "cause." In *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir.1993), however, the Second Circuit provided guidance for determining whether a party has shown "cause" to withdraw a reference. *See id.* at 1101. Under *Orion*, a district court should "first evaluate whether the claim is core or non-core," a reference to § 157's distinction between "core" matters, which bankruptcy courts have statutory authority to "hear and determine," and "non-core matters," for which bankruptcy courts may only issue

4

"proposed findings of fact and conclusions of law" subject to de novo review by the district court. *Id.* at 1100–01. After the threshold determination of whether a claim is core or non-core, *Orion* instructs district courts to take into account whether the claim is "legal or equitable," as well as "considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." *Id.* at 1101.

While most courts continue to follow some version of the *Orion* framework, the Supreme Court's subsequent decision in *Stern v. Marshall*, 564 U.S. 462 (2011) has called into question the usefulness of asking whether a claim is "core" or "non-core" in evaluating a motion to withdraw. In *Stern*, the Court held that a bankruptcy court, as a legislative court, lacked constitutional authority to enter judgment on a state-law counterclaim for tortious interference, notwithstanding the fact that this claim was classified as "core" under 28 U.S.C. § 157(b). *See id.* at 469. The Court held that the classification of claims as "core" or "non-core" failed to adequately distinguish between those claims that a bankruptcy court could decide and those that could be decided only by an Article III Court. Although the Court did not set a precise standard for determining whether a bankruptcy court has constitutional authority to enter final judgment in a particular matter, it considered several factors, including whether the claim involved a "public" or "private" right, whether the claim would necessarily be resolved by ruling on the creditor's proof of claim, and whether the parties had consented to final adjudication by the bankruptcy court. *See id.* at 487–93. And while the precise contours of *Stern*'s holding may remain unclear, *Stern* established that the mere characterization of a claim as "core" or "non-core" under § 157 does not suffice to determine whether a bankruptcy court has the constitutional authority to adjudicate it.[5]

---

[5] Far more could be, and has been, said about *Stern*. As several other courts have explained, *Stern* followed the Supreme Court's 1982 decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), in which a majority of the Court held that a bankruptcy court could not enter final judgment on a state-law contract claim against a party who was not otherwise involved in the bankruptcy

5

Since *Stern*, several courts in this district have simply updated the first factor in the *Orion* analysis, asking not "whether the claim is core or non-core," *Orion*, 4 F.3d at 1011, but rather whether the bankruptcy court has authority to finally adjudicate the matter. *See, e.g., Messer v. Magee (In re FKF 3, LLC)*, No. 13-CV-3601 (KMK), 2016 WL 4540842, at *6 (S.D.N.Y. Aug. 30, 2016) ("The Court . . . considers each of the five *Orion* factors, as modified by *Stern*: whether the bankruptcy court has final adjudicative authority over the claim; whether the claim is legal or equitable; and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."); *Pension Fin Servs. v. O'Connell (In re Arbco Capital Mgmt., LLP)*, 479 B.R. 254, 262 (S.D.N.Y. 2012) ("This Court concludes, as have others in this district, that the relevant inquiry under the first prong of the *Orion* test is not whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter."); *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 467 (S.D.N.Y. 2011) ("[A]fter *Stern*, one can still apply the *Orion* [test] . . . not looking at whether the matter can be classified as 'core' under 28 U.S.C. § 157, but rather at whether, under *Stern*, the Bankruptcy Court has the final power to adjudicate it."). The Court agrees with this approach, which neither party challenges here. Accordingly, in evaluating Defendants' motion to withdraw, the Court considers first whether Bankruptcy Court has the authority to finally adjudicate the Trustee's

---

proceeding. *See id.* at 69–72 (plurality op.); *id.* at 90–91 (Rehnquist, J., concurring in judgment). A plurality of the Court, however, determined that "legislative courts," including bankruptcy courts, could constitutionally decide certain claims involving "public rights"—a category of claims that the plurality did not define. *See id.* at 69–72 (plurality op.). Congress responded with the Bankruptcy Act of 1984, which authorized bankruptcy courts to enter final judgments on an enumerated set of "core" proceedings— including, for example, "proceedings to determine, avoid, or recover preferences," and "proceedings to determine, avoid, or recover fraudulent conveyances"—but only to submit proposed findings and conclusions to district courts in other, "non-core" proceedings. *See* 28 U.S.C. § 157(b)(1)(F), (H), (d). For the next seventeen years, during which *Orion* was decided, it was presumed that Congress had solved the problem that *Northern Pipeline* identified: bankruptcy courts could, it was thought, constitutionally enter final judgments on matters that Congress had designated as "core." *Stern* rejected that view. For purposes of deciding the motion at hand, the Court need not address the full implications of *Stern* on federal bankruptcy law.

claims, then addresses the remaining *Orion* factors, including whether the claim is "legal or equitable," followed by "considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." *Orion*, 4 F.3d at 1101.

"The party seeking to withdraw the reference bears the burden of demonstrating that permissive withdrawal is warranted." *Wong v. HSBC Bank USA (In re Lehman Bros. Holdings Inc.)*, 532 B.R. 203, 211 (S.D.N.Y. 2015).

## DISCUSSION

Under the circumstances of this case, the Court concludes that it is not appropriate, at this stage, to withdraw the reference from the Bankruptcy Court.

The first factor—whether the Bankruptcy Court has authority to enter final judgment in this matter—weighs in favor of withdrawing the reference. The parties do not dispute that the Trustee's common-law claims for negligence, breach of fiduciary duty, and piercing the corporate veil, all of which involve private rights, may not be finally adjudicated by the Bankruptcy Court. *See, e.g., In re Arbco Capital Mgmt.*, 479 B.R. at 266 (concluding that claims for breach of fiduciary duty and negligence "involve non-core proceedings and are indisputably private rights"); *cf. J. Baranello & Sons, Inc. v. Baharestani (In re J. Baranello & Sons, Inc.)*, 149 B.R. 19, 26 (Bankr. E.D.N.Y. 1992) (concluding that an adversary proceeding seeking to pierce the corporate veil was not "core"). The Trustee also does not dispute that, under *Stern*, the Bankruptcy Court may not enter final judgment on its remaining claims for preferential treatment and fraudulent conveyance, even though these claims are characterized as "core" under 28 U.S.C. § 157(b)(2). *See, e.g., N.Y. Skyline, Inc. v. Empire State Building Tr. Co. (In re N.Y. Skyline, Inc.)*, 512 B.R. 159, 177 (S.D.N.Y. 2014) ("Fraudulent conveyance actions 'arise under' section 548 of the Bankruptcy Code and are listed as core in section 157(b)(2), but following *Stern*, courts have held

7

that bankruptcy judges may not enter final judgments in such cases absent the consent of the parties."); *Adelphia Recovery Tr. v. FLP Grp., Inc.*, No. 11-CV-6847 (PAC), 2012 WL 264180, at *4 (S.D.N.Y. Jan. 30, 2012) ("Supreme Court precedents demonstrate that a fraudulent transfer claim involves a private right."), *aff'd*, 601 F. App'x 52 (2d Cir. 2015) (summary order); *see generally Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55 (1989) (explaining that a "bankruptcy trustee's right to recover a fraudulent [or preferential] conveyance" is "more accurately characterized as a private rather than a public right").

That the Bankruptcy Court lacks authority to enter final judgment on the claims presented in this action is not, however, dispositive of Defendants' motion to withdraw the reference. *Cf., e.g., In re FKF 3, LLC*, 2016 WL 4540842, at *5 ("While the core/non-core determination is an important factor, courts have repeatedly emphasized that this factor is not dispositive of a motion to withdraw a reference." (quoting *In re Ne. Indus. Dev. Corp.*, 511 B.R. 51, 53 (S.D.N.Y. 2014))); *Lehman Bros. Holdings Inc. v. Intel Corp. (In re Lehman Bros. Holdings Inc.)*, 18 F. Supp. 3d 553, 557 (S.D.N.Y. 2014) (same); *Kirschenbaum v. Fed. Ins. Co. (In re EMS Fin. Servs., LLC)*, 491 B.R. 196, 205 (E.D.N.Y. 2013) ("[W]hile the non-core nature of the Trustee's claims weighs in favor of withdrawing the reference from the bankruptcy court, the core/non-core determination does not end the inquiry." (alterations omitted) (quoting *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 593 (S.D.N.Y. 2012))). Accordingly, while the Bankruptcy Court's inability to enter final judgment on the Trustee's claims weighs in favor of withdrawing the reference, the Court proceeds to consider the remaining *Orion* factors.

Considerations of efficiency weigh against withdrawal of the reference from the Bankruptcy Court. First, the Bankruptcy Court has already developed substantial familiarity with the facts underlying this case, over which it has presided for more than two years. On November

2, 2016, for example, the Bankruptcy Court held a two-hour oral argument, which produced a 136-page transcript, on Defendants' pending motion to dismiss the Trustee's amended complaint. *See* Tr. of Nov. 2, 2016 Hearing (Bankr. Adv. Dkt. 67). During this hearing, the Bankruptcy Court questioned the parties on every claim asserted in the Trustee's amended complaint and discussed, in considerable detail, the key factual allegations in this case, including the allegedly unlawful transfers and the Defendants' involvement in winding down the Debtors' affairs. *See id.* In addition, the Bankruptcy Court gained more general knowledge about this dispute by ruling on the Debtors' motions to dismiss the Chapter 7 petitions for improper venue. *See* Bankr. Dkts. 15, 16. Before ruling on this motion, the Bankruptcy Court held a hearing, in which the parties presented evidence and argument regarding several issues that are likely to be presented in this adversary proceeding, such as the geographic scope of the Debtors' operations, the extent to which the Defendants in this case acted as decisionmakers for the Debtors, and the pre-petition transfers of the Debtors' client files. *See* Bankr. Dkt. 16. In light of its involvement in this action to date, the Bankruptcy Court is familiar with the facts of the case and is well positioned to handle this adversary proceeding. *See, e.g., In re Motors Liquidation Co.*, 538 B.R. 656, 665 (S.D.N.Y. 2015) (finding that "there are no efficiency gains to be made by withdrawing the reference," where the bankruptcy court was "undoubtedly more familiar" than the district court with the issues presented); *Pereira v. Garritano (In re Connie's Trading Corp.)*, No. 14-CV-0376 (LAK) (GWG), 2014 WL 1813751, at *9 (S.D.N.Y. May 8, 2014) (R. & R.) (finding that "judicial efficiency will be promoted by denying the motion to withdraw the reference," where "[t]he adversary proceeding pending in the bankruptcy court is nearly two years old," and the bankruptcy court "has supervised discovery, has held numerous hearings, and has pending before it cross-motions for summary judgment"); *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 723–24 (S.D.N.Y.

2012) (denying motion to withdraw where the bankruptcy court had supervised discovery and begun work on motions to dismiss); *Dynegy Danskammer, LLC v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 533 (S.D.N.Y. 2012) ("[I]n cases where the bankruptcy court is more familiar with the record or already has extensive experience in the matter, it may be most efficient for the bankruptcy court to propose recommendations first, even though the district court ultimately would have to review them de novo.").

Second, discovery in this case may prove complex, and the Bankruptcy Court's familiarity with the discovery issues in this and similar cases would allow it to manage the discovery process most efficiently. As discussed above, the Trustee alleges that Defendants did not maintain proper financial records for Debtors and its many "hubs" or subsidiary organizations—which, if true, will likely complicate the Trustee's efforts to obtain discovery in this action. The Bankruptcy Court, however, has already engaged, at least to some degree, in the discovery process. At oral argument on Defendants' motion to dismiss the amended complaint, for example, the Bankruptcy Court addressed a variety of discovery issues, including the production of financial records and e-mails and Defendants depositions.[6] In addition, the likely discovery issues in this case—missing records from a number of related corporate entities—are similar to those that bankruptcy courts routinely confront in adversary proceedings. Thus, the Court concludes that, in light of the nature of the discovery in this case and the Bankruptcy Court's participation in the process to date, discovery would be handled more efficiently by the Bankruptcy Court. *See e.g.*, *In re Ne. Indus. Dev. Corp.*,

---

[6] In several instances during the oral argument, the Bankruptcy Court provided specific guidance to the parties regarding discovery in this case. *See, e.g.*, Tr. of Nov. 2, 2016 Hearing at 44:4–8 ("Have you gotten – I know counsel indicated that you've gotten the credit card statements. Have you gotten emails? . . . [H]ave you taken discovery of the email files?"); *id.* at 58:12–14 ("[T]he easy way to do this would have been to take Ms. Kasturi's deposition or ask for her email files."); *id.* at 98:1–2 ("So give me – give me an order, and I'll enter the order and you can send that to AmEx.").

511 B.R. at 54 ("[I]t is plain that efficiency would be served by leaving this adversary proceeding in the Bankruptcy Court, which is currently supervising discovery.").

Third, the Bankruptcy Court's expertise in addressing the types of claims at issue in this case would enable it to most efficiently manage this case. Several of the Trustee's claims, including its claims for preferential treatment and fraudulent conveyances, are "core" claims, with which bankruptcy courts have considerable experience. Even though the Bankruptcy Court does not have the authority to enter final judgment on these claims, its experience with claims of this nature would be useful in handling this case in an efficient manner. *See, e.g., id.* at 51 ("The Bankruptcy Court's resolution of any motion for summary judgment, or any decision by the Bankruptcy Court based on the documentary record, will be very useful to the District Court given the Bankruptcy Court's expertise with adversary proceedings."); *Nisselson v. Salim*, No. 12-CV-0092 (PGG), 2013 WL 1245548, at *6 (S.D.N.Y. Mar. 25, 2013) ("[A]s a general matter, the Bankruptcy Court is more familiar with avoidance claims, which are customarily adjudicated by bankruptcy courts because they are core proceedings."); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. (In re Madoff Securities)*, 490 B.R. 46, 58 (S.D.N.Y. 2013) (denying a motion to withdraw the reference in light of "the efficiency of receiving the recommendation of a court that possesses both intimate familiarity with the underlying liquidation and substantial expertise in the bankruptcy law").

The remaining *Orion* factors do not favor either party. While at least some of the Trustee's claims are legal in nature, it has not yet asserted a right to a jury trial, and the case is not ready for trial. *See, e.g., In re Lehman Bros. Holdings Inc.*, 532 B.R. at 215 ("Plaintiffs' right to a jury trial, even if coupled with a finding that the Bankruptcy Court cannot enter final judgment, does not compel withdrawing the reference until the case is ready to proceed to trial." (internal quotation

marks omitted)); *Lyondell*, 467 B.R. at 725 (finding the fact that "[t]he defendants have a right to a jury trial" did not weigh in favor of withdrawing the reference, where the defendants "have not yet asserted this right and the case is not yet trial-ready."); *cf. Murphy v. County of Chemung (In re Murphy)*, 482 F. App'x 624, 628 (2d Cir. 2012) (summary order) ("The mere presence of a jury demand in a case does not mandate withdrawal of the reference . . ."); *In re Ne. Indus. Dev. Corp.*, 511 B.R. at 54 ("Courts have denied motions to withdraw a reference in cases involving legal claims and jury demands where they have found that it would be more efficient for the Bankruptcy Court to handle pre-trial matters."). Finally, the Trustee does not argue that concerns regarding "forum shopping" or "uniformity in the administration of bankruptcy law" have any bearing on whether withdrawal of the reference is appropriate at this time. Accordingly, the Court does not find that any of the remaining *Orion* factors counsel in favor of withdrawing the reference in this case.

In sum, the Court concludes that it is not appropriate to withdraw the reference from the Bankruptcy Court at this time.

## CONCLUSION

For the foregoing reasons, Defendants' motion to withdraw is denied without prejudice to any renewed motion to withdraw when the case is ready for trial.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket Entry 1.

SO ORDERED.

Dated: October 25, 2017
       New York, New York

Ronnie Abrams
United States District Judge